## Boles' Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extracts from the adjudication of

GEST, J., Auditing Judge.—John P. Boles died on March 21, 1932, intestate, unmarried, and leaving six children, Eleanore C., Agnes M., Matilda M., Joseph P., Hubert A. and John P. Boles, Jr. John P. Boles, Jr., a weakminded person, was represented by his guardian, George Maxman, Esq. . . .

The following claims were presented:

1. Commonwealth of Pennsylvania for maintenance and support of John P. Boles, Jr., son of the decedent, at the Philadelphia Hospital for Mental Diseases, at Byberry, Pennsylvania, February 13, 1920, to March 21, 1932, $1,263.14.

2. City of Philadelphia, Department of Public Health, for maintenance of John P. Boles, Jr., at Philadelphia Hospital for Mental Diseases, Byberry, for 6 years preceding death of decedent, $1,565 (noted in petition for distribution as charged from February 13, 1920, to March 21, 1932, at $5 per week, $3,157.86).

The detailed statement of the claim of the Commonwealth, under affidavit of the house agent of the above hospital, specified the claim as from February 13, 1920, to March 21, 1932, 631 4/7ths weeks, at $2 per week, or $1,263.14.

No testimony was taken, but the facts appeared as follows:

John P. Boles, Jr., a son of the decedent, was an adult indigent insane person, and was maintained at the Philadelphia Hospital at Byberry during the period above mentioned. He was possessed of no property until, upon his father's death, he became entitled to one sixth of the latter's estate. It was admitted that the Commonwealth and the city were entitled to the amounts claimed by them respectively; but it was claimed by the guardian of John P. Boles, Jr., and by the accountant, who was one of the children of the decedent, that the claims should be made primarily against the estate of the lunatic, and, if the estate of the father is liable, it is entitled to reimbursement from his son's distributive share. In effect, the estate and the other children of the decedent argue that these claims should be paid from the distributive share of the lunatic, whereas the Commonwealth and the city argue that these claims should first be paid from the father's estate as debts due by him at the time of his decease, and the residue distributed to the six children, the share of John P. Boles, Jr., being payable to his guardian and necessarily liable for his future maintenance.

The question is, in my opinion, quite clear. The Act of June 1, 1915, P. L. 661, sec. 3, provides:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so

to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided."

This gives the right to the claimants to proceed either against the estate of the lunatic himself, if he is possessed of property, or against the father, if he is able to respond, or his estate if he is deceased, and it is entirely immaterial that no claim was made against the father in his lifetime. In my opinion, the claims of the Commonwealth and the city for maintenance of the insane son, up to the time of the decedent's death, should be paid by the father's estate like any other debt and the residue distributed as above stated. It does not seem necessary to examine in detail the decisions that were cited, as the question seems to be ruled by Harnish's Estate, 268 Pa. 128, and Geisler's Estate, 76 Pa. Superior Ct. 560, and reference may also be made to the adjudication of Holland, J., in Estate of Annie C. Kelley, O. C. Montgomery County, filed January 26, 1932, and the adjudication of Marx, P. J., in the Estate of Annie Murphy, O. C. Philadelphia County, 3567 of 1931, which are much in point. On the other side, Baker's Estate 72 Pitts. L. J. 214, was cited but, with great respect to the learned Orphans' Court of Allegheny County, I think it is inconsistent with the authorities cited, and I must decline to follow it. . . .

*James G. Gill,* and *Bronte Greenwood,* for exceptant.

*James F. McMullan, John Franklin Shields, T. B. K. Ringe,* and *David J. Smyth,* contra.

SINKLER, J., October 27, 1933.—Section 1 of the Act of Assembly of June 1, 1915, P. L. 661, enacts that the property or estate of an inmate of any institution of the Commonwealth maintained in whole or in part at the expense of the Commonwealth shall be liable for his maintenance. Section 3, imposing liability upon the father of the inmate, among others, is quoted in full by the auditing judge. Section 4 confers jurisdiction upon the court of common pleas of the county wherein such inmate resides, to enforce the liability imposed by sections 1 and 3. The provisions of the remaining sections of the act are not before us for construction.

The Supreme Court of this State in an opinion by Mr. Justice Walling, in Harnish's Estate, 268 Pa. 128, points out that the Act of 1915 refers only to indigent insane, and that as to that class the act changes the standard of liability and method of procedure theretofore in force. It is held that, while the liability of living persons is by the act properly to be adjudicated in the court of common pleas, where one upon whom the statute has placed the burden dies, the lack of an adjudication by the court of common pleas during his lifetime does not prevent the allowance of the Commonwealth's claim by the orphans' court.

The Superior Court, in a per curiam opinion, affirmed an opinion of Mitchell, J., of the Orphans' Court of Allegheny County, in Geisler's Estate, 76 Pa. Superior Ct. 560, to the effect that the estate of the mother of an indigent insane adult child was liable for his support, although no claim was made against her in her lifetime. Harnish's Estate, supra, is cited as establishing the jurisdiction of the orphans' court in such cases.

The exceptions before us relate to the allowance of the claims of the Commonwealth and of the City of Philadelphia against the estate of the father of an indigent insane adult child for the maintenance of such child. No claim had ever been presented to the parent during his lifetime or order obtained. Upon the exceptions, it is argued that the Act of 1915 imposes a primary liability upon the property and estate of the child; that the liability of his father or his

father's estate is secondary; that an interest in the father's esate vested in the child immediately upon his father's death; and that the adjudication should be so amended as to charge the payment of the two claims in question, first against the one-sixth distributive share of the insane child and the balance against the remaining five-sixth shares, and that the balance remaining be divided among the five children other than the insane child.

The exceptants distinguish the present case from Harnish's Estate, supra, and Geisler's Estate, supra, on the ground that in the two cases cited the parent of the indigent insane child died testate while in the present case he died intestate. Certain cases relied upon by Holland, J., in his adjudication in the estate of Annie C. Keeley, Orphans' Court of Montgomery County, are distinguished on the same ground.

The following from the opinion of Evans, J., C. P. Allegheny County, reported in Commonwealth ex rel. v. Neff, 29 Dist. R. 1010, is quoted by the exceptants:

"But the liability of these is only secondary to the liability of the estate of the person maintained, and I take it that that was the fair meaning of this act that the estate of the lunatic should be liable, and if his estate was insufficient to pay the expense of his maintenance in the hospital, then the father and mother, wife or husband, or children would be liable for his maintenance."

The proceeding was instituted by the Commonwealth against the mother of a deceased insane child who was not indigent. All bills presented by the Commonwealth for his maintenance had been paid by his committee during his lifetime, and after his death his committee filed an account in the Common Pleas Court of Allegheny County, and the balance was awarded to his administrator, who in turn had filed his account in the orphans' court, showing a substantial balance for distribution. It was held that, the Commonwealth having failed to collect its claim from the estate of the child, the mother should not be required to pay for the neglect of the Commonwealth.

Baker's Estate, 72 Pitts. L. J. 214, is also relied upon by the exceptants. Two of the children of decedent were insane indigents. A claim of the Commonwealth for their maintenance was presented at the audit of his estate. The auditing judge found that it was eminently fair and just that the claim should be awarded against the distributive shares of these two insane indigents and not admitted as a claim against the estate.

We are of the opinion that the interpretation of the Act of 1915 contained in the opinion of Evans, J., in Commonwealth v. Neff, supra, may be correctly applied in cases where the insane indigent is possessed of an estate. But in the present case the insane indigent has no other estate than his distributive share in the balance shown for distribution after the payment of administration expenses, taxes, and debts of the decedent. For that reason the present case is to be distinguished from Commonwealth v. Neff. For the same reason, and concurring with the learned auditing judge in his great respect for the Orphans' Court of Allegheny County, we are unable to follow the decision in Baker's Estate, supra.

The argument of exceptant is based upon the unsound premise that an interest vested in the insane indigent in the estate of his father, immediately upon the death of the latter. He is entitled to share in the balance shown for distribution after the payment of all debts. The claims of the Commonwealth and city are debts against the estate of the decedent which could have been collected from him during his lifetime.

We are unable to recognize the distinction made by exceptant between cases in which the parent of an indigent insane child died testate or intestate.

Whether the child takes by will or under the intestate laws, he is entitled to share only in the balance left for distribution after the payment of administration expenses, taxes and debts.

The exceptions are dismissed and the adjudication is confirmed absolutely.